# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 2412 | DATE | July 16, 2004 |
| CASE TITLE | David E. Ogdon v Barry G. Hoyt | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Defendants' motion to dismiss is denied as to counts I through III, and granted with respect to count IV.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 19 2004 date docketed | 7 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | GMA docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GS | courtroom deputy's initials | 2004 JUL 16 PM 1:24 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID E. OGDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) No. 04 C 2412 | **DOCKETED** |
| v. | ) | JUL 1 9 2004 |
| | ) Judge Robert W. Gettleman | |
| BARRY G. HOYT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David E. Ogdon seeks damages against defendant Barry G. Hoyt for his alleged refusal to fulfill the duties of his contract with plaintiff to purchase $833,000 worth of plaintiff's shares of Newco stock.[1] Specifically, plaintiff asserts the following claims: (1) breach of contract (Count I); (2) estoppel (Count II); (3) quantum meruit (Count III); and (4) breach of fiduciary duty (Count IV). Defendant has moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendant's motion to dismiss is denied with respect to Counts I through III, and granted with respect to Count IV.

## FACTS[2]

Defendant Barry G. Hoyt ("Hoyt") was CEO and director of Asset Allocation Company ("AAM"), a registered investment advisor that services small and medium insurance companies. Plaintiff David E. Ogdon ("Ogdon") was a senior portfolio manager for AAM until he left on January 1, 2000. A group of investors offered to buy up to 33% of the existing business for

---

[1] The instant suit was initially filed in the Circuit Court of Du Page County, Illinois, and was removed to this court in April 2004, based on diversity of citizenship. 28 U.S.C. § 1332.

[2] The facts recited herein are those alleged in the complaint which, for purposes of this Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996).

$23,100,000. The lead investor was an entity known as Cenco. In the first quarter of 2001, Cenco signed a written Stock Purchase Agreement to purchase up to 33% of an entity that would be created to own the companies and/or revenue streams of AAM and its affiliated companies. Six of eight AAM-related entities were consolidated to form the entity called Newco. The two other existing entities, AAM Advisors, Inc. and AAM Convertibles, Inc., were S corporations, which could not be purchased by Cenco, a C corporation, without "adverse consequences." Therefore, all of the contracts of AAM Advisors, Inc. and AAM Convertibles, Inc., were transferred to Newco. In return, AAM Advisors, Inc. and AAM Convertibles, Inc., received stock in Newco, and that stock became the sole asset of the two S corporation entities.

Plaintiff and defendant owned 4.6% and 23% of Newco stock, respectively. Under the Purchase Agreement, Cenco was to purchase 25% of Newco by June 2001 and had a six-month option to purchase an additional 8.33% of Newco. The purchase price was $700,000 for each 1% purchased, a 70% premium over "internal valuations." Each owner of Newco shares could sell an equal percent of his shares to Cenco.

In April 2001, one month prior to the closing of Cenco's purchase of 25% of Newco, defendant approached plaintiff about a "side deal." If plaintiff sold his pro-rata shares to Cenco, he would be selling some of his S corporation holdings. Defendant wanted to avoid this because as a shareholder of the S corporation entities, a sale by plaintiff to Cenco would create a capital gain for all shareholders of AAM Advisors or AAM Convertibles and subject defendant to capital gains taxes. Further, the sale of more than 2.2% of Newco stock from AAM Advisors by plaintiff to Cenco would present difficulties for defendant to maintain control of the Board of Directors of Newco.

Defendant met with plaintiff on or about April 26, 2001, to discuss defendant's request. The complaint alleges that plaintiff and defendant "agreed" that plaintiff would not tender as many shares as plaintiff was entitled to tender. Defendant promised to purchase from plaintiff the amount of shares plaintiff would not be selling to Cenco at the same price promised by Cenco, so that plaintiff would receive the same deal as if he were selling directly to Cenco. Based on defendant's assurances at this meeting, plaintiff did not insist on having an attorney put the agreement in a formal writing. Following this meeting, plaintiff sent emails to Mr. Marvogenes and defendant regarding the specific numbers discussed at the meeting and going through ownership numbers.

On May 31, 2001, Cenco proceeded with its purchase of 25% of Newco stock. Plaintiff, in reliance on defendant's promise, tendered fewer shares of Newco to Cenco than he might have. Plaintiff sent an email to defendant, Mr. Marvogenes, and Ms. Richards on June 1, 2001, confirming figures for the side deal and suggesting June 30th as the date to complete the transaction. On July 7, 2001, plaintiff sent defendant an email regarding defendant's failure to purchase plaintiff's shares. Because Cenco decided to exercise its option to buy an additional 8.33% of Newco, defendant suggested delaying payment until Cenco's second purchase was complete, along with a second side deal between plaintiff and defendant. Again, in reliance on defendant's promise, plaintiff did not tender to Cenco as many shares as he could have when Cenco purchased the additional 8.33% of Newco. Defendant has not purchased any of plaintiff's Newco stock, and has received $833,000 "that should have been paid to [plaintiff]."

3

**DISCUSSION**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Nonetheless, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

The pleading requirements under Fed. R. Civ. P. 8(a)(2) necessitate only "a short and plain statement showing the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims and the grounds they rest upon." Thompson, 300 F.3d at 753.

1. Breach of Contract

The elements of breach of contract under Illinois law are, "(1) an offer and acceptance, (2) consideration, (3) definite and certain contractual terms, (4) the plaintiff's performance of his contractual obligations, (5) the defendant's breach of the contract, and (6) damages resulting from the breach." Green v. Trinity Int'l Univ., 344 Ill. App. 3d 1079, 1085 (Ill. App. 2d Dist. 2003).

According to defendant, although negotiations took place with plaintiff, the parties did not enter into a contract because no definite and certain contractual terms were agreed upon. The complaint, however, specifically alleges the acceptance of terms and figures, as well as assurances that the agreement would be honored by defendant. Additionally, plaintiff points to specific details of the financial loss caused by defendant's breach. The complaint clearly states, "the side-deal was that [defendant] would purchase from [plaintiff]—at the Cenco price—.8323%(1.6633% - .831%) of [plaintiff's] Newco stock out of AAM Advisors or AAM Convertibles immediately after the completion of Cenco's initial purchase."

Defendant further argues that the existence of an oral contract must be proved by "clear, convincing and satisfactory evidence." In re Marriage of Parr, 103 Ill. App. 3d 199, 204 (Ill. App. 2d Dist. 1981). While this may be the case, this motion merely tests the sufficiency of the complaint and not the merits. Gibson, 910 F.2d at 1520. Accordingly, the court denies defendant's motion to dismiss Count I.

2. Estoppel

To establish a claim based on promissory estoppel under Illinois law, a "plaintiff must allege and prove that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. Plaintiff's reliance must be reasonable and justifiable." Quake Construction, Inc. v. American Airlines, Inc., 141 Ill. 2d 281, 310 (Ill. 1990) (citations omitted).

Defendant argues that plaintiff cannot raise this claim because estoppel cannot exist where there is a contractual relationship between the parties. This argument ignores a party's

5

right to plead a claim for breach of contract while simultaneously pleading a claim for promissory estoppel in the alternative. Fed. R. Civ. P. 8(e)(2) states in relevant part: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses," and "a party may also state as many separate claims or defenses as the party has regardless of consistency." Plaintiff's claim will not be dismissed for pleading in the alternative.

Defendant further argues that plaintiff does not sufficiently plead the elements of estoppel, with emphasis on the ambiguity of the alleged oral contract and plaintiff's unreasonable reliance thereon. The complaint alleges that defendant made an unambiguous promise to pay plaintiff the Cenco price for the shares plaintiff would decline to tender to Cenco. Additionally, plaintiff's complaint alleges reliance on defendant's promise, the foreseeability of such reliance, the detriment incurred through reliance, and the reasonableness of such reliance. Taking plaintiff's allegations as true, as this court must on a motion to dismiss, plaintiff has sufficiently pled the certainty of the promise, as well as the reasonableness of plaintiff's reliance on defendant's assurances. Therefore, the court denies defendant's motion to dismiss Count II.

3.   Quantum Meruit

Quantum meruit is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation. Midcoast Aviation, Inc. v. General Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990). To state a claim for quantum meruit, "the plaintiff bears the burden of establishing: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange will be unjust." Perini

6

Bldg. Co., Inc. v. Univ. of Chicago, 98 C 1744, 1999 WL 58556, at *2 (N.D.Ill. Feb. 3, 1999) (citing Midcoast Aviation, Inc., 907 F.2d at 737).

Defendant argues that plaintiff cannot plead quantum meruit where there is an actual contract. As stated above, pursuant to Fed. Civ. P. 8(e)(2), a plaintiff may plead contradictory claims in the alternative. In addition, defendant states that plaintiff fails to allege the necessary elements of quantum meruit. Specifically, defendant claims that the complaint is not clear as to what benefit defendant received unjustly. The court disagrees. Plaintiff's complaint alleges that his refusal to tender as many shares to Cenco as he could have, pursuant to his agreement with defendant, resulted in both pecuniary and administrative benefits to defendant. Plaintiff also alleges that defendant's refusal to pay for services rendered is inequitable. Therefore, the court denies defendant's motion to dismiss Count III.

4. Breach of Fiduciary Duty

Under Illinois law, a plaintiff may recover for breach of fiduciary duty where: "(1) a fiduciary duty exists on defendant's part; (2) the defendant breached that fiduciary duty; and (3) damages proximately resulted from the breach." Pope v. Smith-Rothchild Financial Co., 03 C 3335, 2003 WL 21994023 (N.D.Ill. Aug. 21, 2003) (citation omitted).

Defendant argues that the complaint fails to allege a fiduciary relationship as a matter of law. Plaintiff argues that the nature of the transaction created a principal-agent or trustee-beneficiary relationship, where a fiduciary duty exists as a matter of law. See Prime Leasing, Inc. v. Kendig, 332 Ill. App. 3d 300, 313 (Ill. App. 1st Dist. 2002); Paskas v. Illini Federal Sav. & Loan Ass'n, 109 Ill. App. 3d 24, 30, 440 N.E.2d 194, 198 (Ill. App. 5th Dist. 1982). The

7

complaint, however, fails to allege any facts to support this theory. As noted by defendant, such a ruling would mean that any contract creates a fiduciary relationship.

"A fiduciary relationship and the attendant duties may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." Prime Leasing, Inc. v. Kendig, 332 Ill. App. 3d 300, 313 (Ill. App. 1st Dist. 2002). Plaintiff's complaint alleges no such "special circumstances." Instead, plaintiff merely asserts that "because of the relationships, promises and actions alleged above, [defendant] owed fiduciary duties to [plaintiff]." The facts do not describe a fiduciary duty. Plaintiff and defendant were both sophisticated shareholders conducting a business transaction at arms length. This district has previously held, "a contractual relationship alone does not normally create a fiduciary duty." Pope v. Smith-Rothchild Financial Co., 03 C 3335, 2003 WL 22889377 (N.D.Ill. Dec. 5, 2003) (citing Oil Express Nat'l, Inc. v. Latos, 966 F.Supp. 650, 650-51 (N.D.Ill. 1997)). Moreover, the facts do not suggest defendant gained any superiority over plaintiff. Therefore, because plaintiff has not sufficiently pled the existence of a fiduciary duty, the court grants defendant's motion to dismiss Count IV.

5. Attorney Fees and Prejudgment Interest

Defendant's motion to dismiss alleges that plaintiff's complaint asserts no basis for awarding attorney fees. Without reaching the merits of this claim, the court finds any ruling on this issue to be premature.

Plaintiff's response to defendant's motion to dismiss asserts a claim for prejudgment interest. Here, too, the court finds any ruling on this issue to be premature.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss is denied with respect to Counts I through III, and granted with respect to Count IV.

**ENTER:**   **July 16, 2004**

**Robert W. Gettleman**
**United States District Judge**