IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID E. OGDON, )
)
Plaintiff, )
)
v. ) No. 04 C 2412
)
BARRY G. HOYT, ) Judge Robert W. Gettleman
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff David E. Ogdon ("Ogdon") filed an amended complaint seeking damages against defendant Barry G. Hoyt ("Hoyt") for allegedly breaching an oral contract with Ogdon to purchase $833,000 worth of Ogdon's shares in a privately-held business of which both parties were owners. Plaintiff asserted four claims: (1) breach of contract (Count I); (2) estoppel (Count II); (3) quantum meruit (Count III); and (4) breach of fiduciary duty (Count IV). This court previously granted defendant's motion to dismiss Count IV, and denied defendant's motion to dismiss Counts I through III. Ogdon v. Hoyt, 2005 WL 66039 (N.D.Ill. Jan. 11, 2005). Defendant has moved for summary judgment on all remaining counts under Fed. R. Civ. P. 56, and plaintiff has filed cross motions for summary judgment on all counts and on defendant's affirmative defense. For the reasons stated below, the court denies the cross motions for summary judgment on Count I, grants defendant's motion for summary judgment on Counts II and III, and denies as moot plaintiff's motion for summary judgment on the issues of minimum damages and the affirmative defense.

## FACTS

Defendant Hoyt was chief executive officer and director of Asset Allocation and Management Company L.L.C. ("AAM"), a registered investment advisor that serviced small and medium insurance companies. Plaintiff Ogdon was a senior portfolio manager for AAM. Plaintiff and defendant, along with others, were shareholders of AAM Advisors, Inc ("Advisors") and AAM Convertibles, Inc. ("Convertibles"). In 2001, an investor group called CenCo Investment ("CenCo") signed a written stock purchase agreement to purchase up to 33% of an entity that would be created from the roll-up of AAM and its affiliated companies ("Newco"). Neither party specifies when in 2001 Newco was created.

CenCo's purchase of Newco was completed in phases, beginning on June 1, 2001. According to plaintiff's first amended complaint, unlike the other AAM-related entities, Advisors and Convertibles were "S corporations" and thus could not be purchased directly by CenCo, a "C corporation," "without adverse consequences." All of the contracts of Advisors and Convertibles were transferred to Newco, and Advisors and Convertibles received stock in Newco, which became the sole assets of Advisors and Convertibles. CenCo could purchase Newco stock directly from Newco shareholders or from Advisors or Convertibles. Plaintiff alleges that he directly owned .83% of the shares of Newco, and indirectly owned 3.77% of Newco stock through his ownership interests in Advisors and Convertibles.

Plaintiff, defendant, and Peter Mavrogenes ("Mavrogenes"), AAM's chief investment officer, met on April 26, 2001. According to plaintiff's first amended complaint, defendant stated he did not want plaintiff to sell his Newco shares from Advisors or Convertibles to CenCo because of negative capital gains tax consequences to all Advisors and Convertibles

2

shareholders, and because the tendering of more than 2.2% of Newco shares from Advisors would jeopardize defendant's control of Newco. Plaintiff asserts that he and defendant orally agreed at the meeting to a "side deal" under which defendant "promised that he would purchase directly from [plaintiff] whatever amount of the shares [plaintiff] would refrain from selling to CenCo." Plaintiff, in turn, promised not to tender to CenCo his Newco shares from Advisors and Convertibles.[1] According to plaintiff, he and defendant agreed that the transaction would be completed "as soon as we could get the papers done" after each phase of CenCo's purchase. Mavrogenes took notes at the April 26, 2001, meeting, and testified that there was a "firm agreement" at the conclusion of the meeting.

Defendant contests nearly every aspect of plaintiff's version of events at the April 26 meeting, particularly that an agreement was reached. Defendant testified that he told plaintiff that he and Andrew Jarmel, president and a shareholder of Advisors and Convertibles, were planning "to sell as much stock" as they could and "still maintain control," and that Mavrogenes would be "lying or mistaken" if he testified that there was a deal in place.

Plaintiff alleges that in reliance on defendant's promise to execute the side deal he tendered fewer shares of Newco to CenCo than he could have in each phase of CenCo's purchase of Newco shares. It is undisputed that defendant never purchased any shares from plaintiff. It is also undisputed that CenCo never purchased Newco shares held by Advisors or Convertibles. Plaintiff alleges that he lost $833,000 by not selling his Newco shares held by Advisors and Convertibles to CenCo.

---

[1] It is unclear how any shareholder of Advisors or Convertibles could "sell" an asset of either corporation (i.e., the Newco shares) to a third party, and the parties fail to explain this in their summary judgment papers.

3

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.[2]

---

[2]The court notes that plaintiff asserts in his response to defendant's summary judgment motion that because the court previously denied defendant's motion to dismiss the first amended complaint and plaintiff "swore in deposition the truth" of the allegations, defendant's motion for summary judgment must fail. If plaintiff's iteration of the summary judgment were correct and a
(continued...)

4

## DISCUSSION

### I. Local Rule 56.1 statements

Neither party has abided by the letter or the spirit of Local Rule 56.1. Their failures have utterly thwarted the usefulness of the L.R. 56.1 statements as "road maps," Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994), to assist the court by pointing to "the specific undisputed evidence in the record that supports the party's position." Ford v. Lubermens Mutual Company, 197 F.R.D. 365, 366 (N.D.Ill. 2000). For example, most of plaintiff's responses to defendant's statements of fact are significantly longer than the statements themselves, improperly begin with "True, but...." or "True, with emphasis on...," and contain myriad additional, non-responsive facts, including multiple pages of deposition testimony and legal arguments, including extensive case citations. Plaintiff also fails to provide citations to the record in support of more than a dozen sub-paragraphs, contrary to L.R. 56.1's requirement that statements of fact be provided in "short numbered paragraphs, including within each paragraph specific references" to the record. Although not as flagrantly violative of L.R. 56.1 as plaintiff's statements, the value of defendant's 56.1 statements is substantially reduced because defendant fails to tab its exhibits, which are bound in three volumes each nearly three inches thick, or to

---

[2](...continued)
plaintiff could defeat a summary judgment motion merely by swearing to the truth of his own allegations, summary judgment for defendants would be rare indeed. Plaintiff, however, misunderstands the non-movant's burden. The Seventh Circuit has repeatedly held that conclusory, self-serving testimony, lacking factual support in the record, cannot defeat a summary judgment motion, see, e.g., Ozlowski v. Henderson, 237 F. 3d 837, 840 (7th Cir. 2001), and that a non-movant cannot rest on allegations or denials contained in his pleadings in response to a motion for summary judgment. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

provide an index. In addition, defendant frequently cites to deposition exhibits, but no exhibits are attached to the depositions submitted by defendant, and plaintiff filed selected exhibits only.

It is exceedingly difficult for the court to negotiate such a voluminous and unwieldy record, particularly one involving multiple and complicated financial transactions, without meaningful assistance from the parties. In his reply brief, plaintiff refers to the court "wading through the fact statements," which is a generous description of what the parties have forced the court to do. As is often repeated, "judges are not compelled to root through the record like a pig hunting for truffles." See, e.g., Lopez v. Micro Center Sales Corp, 2003 WL 22706957, at *1 n. 2 (N.D.Ill. Nov. 17, 2003). The court's difficulties are further compounded by plaintiff's failure to include a statement of facts in his motion for summary judgment. See Duchossois Indus., Inc. v. Crawford & Co., 2001 WL 59031, at *1 (N.D.Ill. Jan. 19, 2001) (L.R. 56.1 statements are not substitutes for a statement of fact section in a brief). Rather than provide a full written exegesis of the parties' disappointing L.R. 56.1 statements, responses, and replies, which total nearly 200 pages, *excluding* exhibits, however, the court disregards improper statements and responses. See Ogborn v. United Food and Commercial Workers, Local No. 881, 2000 WL 1409855, at *3 (N.D.Ill. Sep. 25, 2000) ("to the extent any factual assertion has been inadequately or improperly supported, such assertions will not be incorporated into the facts taken to be true for purposes of [summary judgment]"). Nevertheless, as explained below, the parties' deficient filings greatly undermine the persuasiveness of their motions and oppositions.

## II.    Breach of Contract (Count I)

Defendant argues that plaintiff has failed to raise a triable issue of fact that an enforceable contract existed between the parties because: (1) plaintiff "gave up nothing" to enter into the side

deal with defendant; (2) plaintiff performed the side deal gratuitously; and (3) no agreement was reached on material terms. Plaintiff responds that the parties agreed that after each phase of CenCo's purchase of Newco defendant would buy the shares of Advisors or Convertibles from plaintiff that plaintiff withheld from tendering to CenCo. Plaintiff and Mavrogenes each testified that the agreed price was the same price CenCo paid for Newco shares, and Mavrogenes' notes from the April 26 meeting reflect calculations based on this price.

As discussed above, the parties have made it difficult to decipher the intricacies of CenCo's purchase of Newco's shares or the arrangement between the AAM shareholders. Whatever the details, it is abundantly clear that triable issues of material fact exist that preclude summary judgment in favor of either party on Count I. Plaintiff and defendant hotly contest what was said at the April 26, 2001, meeting where the alleged agreement was made, and vociferously argue about what each party intended and what inferences to draw from various disputed conduct and statements. The court cannot make the credibility and other findings of fact necessary to resolve the "he said, he said" dispute regarding the existence of an enforceable oral contract on summary judgement, particularly when presented with a record as convoluted as in the instant case. Anderson, 477 U.S. at 255 (when considering all the evidence presented in a motion for summary judgment, the court cannot make credibility determinations nor can it choose between competing possible inferences).

Defendant attempts to rescue its motion for summary judgment by arguing that even assuming defendant agreed to the alleged side deal as described by plaintiff, there was no adequate consideration because plaintiff agreed to "forgo" doing something - selling his shares to CenCo - that he never had the right to do because CenCo did not purchase any Newco shares in

7

Advisors or Convertibles. A legal detriment may constitute consideration. See Hamilton Bancshares, Inc. v. Leroy, 131 Ill. App. 3d 907, 913 (4th Dist. 1985) (quoting 1 WILLISTON ON CONTRACTS § 102A at 380-82 (3rd ed. 1957) (a party to an agreement incurs a legal detriment when he promises to refrain from doing "something which he was [immediately prior thereto] privileged...not to refrain from doing."). According to defendant, plaintiff never had the option of selling to CenCo the Advisors or Convertibles shares that he allegedly agreed to sell to defendant instead.

Defendant's consideration argument, and his redundant argument that plaintiff's promise was merely gratuitous because plaintiff did not forgo anything, is not really a consideration argument at all. Consideration must be analyzed as of the time of entering the contract, Russell v. Jim Russell Supply, Inc., 200 Ill. App. 3d 855, 860 (5th Dist. 1990). Defendant's argument that CenCo ultimately did not buy the shares plaintiff allegedly agreed to sell defendant does not, therefore, address whether the agreement lacked consideration at the time it was made. See F.H. Prince & Co., Inc. v. Towers Financial Corp., 275 Ill. App. 3d 792, 798 (1st Dist. 1995) ("Detriment...as used in testing the sufficiency of consideration means legal detriment as distinguished from detriment in fact."). Defendant fails to offer evidence that at the time the alleged agreement was made, the parties understood or should have understood that it was impossible that plaintiff would have the opportunity to tender his Newco shares in Advisors and Convertibles to CenCo.

Rather than attacking consideration, defendant's mislabeled argument raises questions of damages or breach. Based on the present record, it is unclear how plaintiff was damaged if he forwent an opportunity to sell to CenCo that turned out to be worthless. It is also uncertain

whether defendant breached the agreement by failing to buy plaintiff's Advisors or Convertibles shares because the alleged side deal contemplated defendant buying Newco shares in Advisors or Convertibles stock from plaintiff equal to the amount defendant had sold to CenCo. Because it is undisputed that CenCo did not purchase any Advisors or Convertibles shares, or any Newco shares held by Advisors or Convertibles, it could be argued that defendant was therefore obligated to buy zero shares from plaintiff. Defendant, however, has failed to present arguments regarding damage or breach in a manner that would allow the court to resolve these issues.[3]

Defendant also argues that he is entitled to summary judgment on Count I because there was no meeting of the minds on material terms of the alleged side deal, including which type of share defendant agreed to purchase and the timing of the transaction. See Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 29 (1991) (a binding and enforceable oral contract does not arise unless the material terms of the alleged agreement are sufficiently definite and certain, and enable the court to ascertain what the parties have agreed to do). Id. Regarding the type of shares, plaintiff asserts that he agreed to sell either type of share, at defendant's option, in the amount defendant sold to CenCo, and thus specifying the type of share was not material. Regarding timing, plaintiff and Mavrogenes each testified that plaintiff and defendant agreed on April 26, 2001, that the transactions would take place at the time of each CenCo purchase and as soon as the necessary paperwork could be completed after CenCo closed each phase of the purchase. If the side deal was agreed to as alleged by plaintiff, it appears that it could be an

---

[3]Should defendant, consistent with Fed. R. Civ. P. 11, wish to pursue this theory on summary judgment, the court grants leave to file an appropriate new motion under Rule 56 and this court's standing order. Should defendant choose this route, the court will expect both parties to comply strictly with the rules. Any repeat of the problems discussed above will result in sanctions against the attorneys and the parties.

enforceable contract because it contained a price to be paid for either type of share and a time for the transaction. As discussed above, however, there are myriad disputed facts and questions of credibility regarding the terms and consummation of the agreement that preclude summary judgment.

Defendant also asserts that plaintiff's claim that an agreement was reached on April 26 is precluded by a voice-mail that plaintiff left for defendant on October 18, 2001. Plaintiff stated that, "I think we kinda reached an agreement on at least in principal what we're going to do here." Plaintiff disputes defendant's inference, and asserts that his voice-mail referred to a separate dispute between defendant and plaintiff regarding promissory notes, and did not concern the side deal. There are also disputed facts regarding defendant's final argument, that the stock purchase agreements for Advisors and Convertibles precluded the alleged side deal. Plaintiff admits that section 2.1 of the stock purchase agreements, which require a selling stockholder to first offer the stock to the company for its purchase and then to all of the shareholders, was a barrier to the alleged side deal, but plaintiff asserts that he had received assurances from other shareholders that they would agree to amend section 2.1 or provide a written waiver to allow the alleged agreement between plaintiff and defendant to proceed. Again, the court cannot grant summary judgment for either party in the face of such contested interpretations and disputed facts and inferences.

Accordingly, the court denies the cross motions for summary judgment on Count I.

### III. Estoppel (Count II)

Count II of plaintiff's first amended complaint asserts a promissory estoppel claim. To establish a claim based on promissory estoppel under Illinois law, a plaintiff must establish that:

(1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied on the promise to its detriment. Quake Construction, Inc. v. American Airlines, Inc., 141 Ill. 2d 281, 310 (Ill. 1990) (citations omitted).[4] "Plaintiff's reliance must be reasonable and justifiable." Id. In the instant case, defendant argues that plaintiff has failed to raise a triable issue of material fact that plaintiff relied on defendant's promise to his detriment because the undisputed evidence shows that CenCo never offered to purchase or purchased any Newco shares of Advisors or Convertibles. Unlike his misguided consideration argument, defendant is correct that occurrences subsequent to the consummation of the alleged agreement may be relevant to plaintiff's promissory estoppel claim because plaintiff must demonstrate that he was damaged by his reliance after the alleged promise was made.

In his response to defendant's motion for summary judgment, plaintiff fails to respond to defendant's argument that he did not suffer any detriment as a result of his reliance. In his reply in support of his summary judgment motion, plaintiff jumbles his arguments regarding both quasi-contract claims, Counts II and III, together. Plaintiff suggests, for the first time, that his reliance on defendant's promise caused plaintiff "not to pursue any of several other courses of action that plaintiff was privileged to pursue, and that is to [plaintiff's] damage or detriment." Apparently conceding that he would not have sold his Newco shares in Advisors or Convertibles to anyone else even in the absence of defendant's alleged promise, plaintiff argues that he relied

---

[4]The court notes that some Illinois appellate courts have held that promissory estoppel is not a cause of action, but merely a defense. See, e.g., DeWitt v. Fleming, 357 Ill. App. 3d 571 (5th Dist. 2005). The Illinois Supreme Court's decision in Quake, however, remains good law.

11

by refraining from "exercising such rights as asking CenCo to change the deal, or hiring counsel to file suit to enjoin the deal."

Assuming that plaintiff did forgo these actions in reliance on the alleged agreement, his reliance would not be "reasonable or foreseeable." See Geva v. Leo Burnett Co., Inc., 931 F.2d 1220, 1223 (7th Cir. 1991) (plaintiff's reliance must be reasonable and justifiable). Plaintiff presents no evidence or argument that he and defendant ever discussed asking CenCo to change the deal or retaining counsel, or that these were reasonable responses in reliance on the terms of defendant's alleged promise to buy plaintiff's shares. See Caterpillar, Inc. v. Usinor Industeel, 393 F. Supp. 2d 659, 682 (N.D. Ill. 2005) (noting that reliance must be related to substance of alleged promise). Plaintiff has therefore failed to create a triable issue of material fact that his alleged decisions not to pursue certain "courses of action" were foreseeable, reasonable, or justifiable.

Accordingly, the court grants defendant's motion for summary judgment as to Count II.

## IV. Quantum Meruit (Count III)

Count III of plaintiff's first amended complaint asserts a quantum meruit claim. Quantum meruit is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation. Midcoast Aviation, Inc. v. General Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990). The elements of quantum meruit are that: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange will be unjust. Id. at 737). In the instant case, defendant argues that plaintiff has failed

to present any evidence that he rendered services or that defendant retained any benefit from plaintiff.

It is undisputed that plaintiff never transferred any stock to defendant, and plaintiff does not identify any other service or good retained by defendant. Plaintiff responds to defendant's quantum meruit argument by pointing out that at the CenCo closings, defendant sold more than his pro rata share and plaintiff sold less than his pro rata share, and citing defendant's deposition testimony that he never told Mavrogenes or plaintiff that "there is no deal here." In his summary judgment motion, plaintiff asserts, conclusorily and unconvincingly, that these "undisputed facts fulfill [plaintiff's] burden of proving" the elements of quantum meruit. While these facts are undisputed, they simply do not establish any of the required elements of Count III.

In his reply, plaintiff argues that defendant received a benefit from plaintiff "facilitating the CenCo transaction by not suing or taking other action." Plaintiff provides no authority for his suggestion that forgoing legal or other action constitutes a service as required for a quantum meruit claim[5], and fails to point to any evidence that defendant benefitted from his alleged forbearance. Defendant, of course, did not need plaintiff's permission or assistance to tender the number of shares he sold to CenCo. Plaintiff's attempt to analogize himself to investment bankers and lawyers who "make a living on the service business of facilitating commercial

---

[5]The court notes that plaintiff's argument that this court's previous denial of defendant's motion to dismiss Count III found that "services rendered" are not a required element of quantum meruit misconstrues the court's holding and is without merit. In its previous opinions denying defendant's motion to dismiss Count III, the court recited the elements of quantum meruit under Illinois law, including services rendered. See Ogdon v. Hoyt, 2004 WL 1610973, at *3 (N.D.Ill. July 19, 2004). Plaintiff survived a motion to dismiss because he sufficiently alleged the elements of his claim, but he cannot survive summary judgment without evidence in support of his allegations, including that he provided services to defendant.

transactions of all kinds" is equally unavailing because plaintiff did not provide the services of either profession. Accordingly, the court grants defendant's motion for summary judgment as to Count III, and denies plaintiff's motion.

V.   **Plaintiff's motions for summary judgment**

Plaintiff moves for summary judgment that his minimum damages are $802,558.25, and to preclude defendant's affirmative defense that the alleged side deal was barred by the stock purchases agreement. Because the court denies plaintiff's motion for summary judgment on all the claims, it denies these motions as moot.

## CONCLUSION

For the reasons stated herein, defendant Hoyt's and plaintiff Ogdon's cross motions for summary judgment on Count I are denied. Defendant's motions for summary judgment on Count II and Count III are granted. Plaintiff's motion for summary judgment on minimum damages and defendant's affirmative defense are denied as moot.

**ENTER:**   **January 3, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**